Jack Brill v. Commissioner. Morris Brill v. Commissioner.
Brill v. Commissioner
Docket Nos. 53304, 53305.
United States Tax Court
T.C. Memo 1956-182; 1956 Tax Ct. Memo LEXIS 110; 15 T.C.M. (CCH) 992; T.C.M. (RIA) 56182; August 8, 1956
*110 James A. Ronayne, Esq., 120 Broadway, New York, N. Y., for the petitioners. Charles M. Greenspan, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioners' income taxes and additions thereto for the calendar years 1943 and 1944, as follows: 50% Addi-
tion under
Petitioner
Year
Deficiency
Section 293(b)
Jack Brill
1943
$13,115.82
$ 6,721.72
1944
6,893.08
3,446.54
Totals
$20,008.90
$10,168.26
Morris Brill
1943
$13,281.13
$ 6,808.40
1944
6,719.89
3,359.95
$20,001.02
$10,168.35
The issues for decision are (a) whether the petitioners omitted from their individual Federal income tax returns for 1943 income from commissions on the sale of steel wool and from their returns for 1943 and 1944 income from the sale of steel wool on their own account, (b) whether the petitioners filed false or fraudulent returns in 1943 with intent to evade tax, and (c) whether any part of the deficiencies for 1943 and 1944, if any, is due to fraud with intent to evade tax. Findings of Fact Petitioners Jack and Morris Brill both resided in New York, *111 N. Y., during the years 1943 and 1944. Both now reside in Teaneck, New Jersey. Jack filed an original individual income and victory tax return for 1943 on March 15, 1944, and an amended return on April 29, 1944. He filed an individual income tax return for 1944 on March 9, 1945. All of these returns were filed with the collector of internal revenue for the third district of New York. Morris filed an original individual income and victory tax return for 1943 on March 9, 1944, and an amended return on April 28, 1944. He filed an individual income tax return for 1944 on March 8, 1945. All of these returns were filed with the collector of internal revenue for the fourteenth district of New York. During 1943 and 1944 petitioners, who are brothers, were engaged in a joint venture dealing in steel wool. In April 1943 petitioners began to purchase steel wool from the Hi-Glo Products Co., Bronx, New York. Petitioners purchased a total of 214,402 pounds of steel wool in these years at a cost of $84,249.72, and paid for their purchases with currency. Invoiced sales by Hi-Glo Products Co. to petitioners aggregated $43,814.57 and univoiced sales $40,435.15. A recapitulation of petitioners' *112 steel wool purchases is as follows: 1943
Pounds
Amount
Invoiced purchases
60,823 *
$24,749.20
Uninvoiced purchases
106,203
40,435.15
167,026
$65,184.35
1944
Invoiced purchases
47,376
19,065.37
Petitioners made the following sales to Morris Leinwand on their own account: Number
Price
Amount
1943
Cartons steel wool (200 pads to carton)
Cartons 7,711 1/2
$ 7.50
$57,836.25
Steel Wool (bulk)
Pounds 17,944
.50
8,972.00
Steel Wool (25 lbs. to case)
Cases 553
12.50
6,912.50
Total 1943
$73,720.75
1944
Cartons steel wool (200 pads to carton)
Cartons 6,003 1/2
7.50
$45,026.25
Petitioners issued no invoices for their sales of steel wool during 1943 and 1944, and received payments in currency for all such sales. The original and amended returns filed by petitioners for 1943 reported their incomes as follows: Jack
Morris
Original
Amended
Original
Amended
Return
Return
Return
Return
Net income from paint contract-
ing business
$1,906.98
$1,906.98
Income from painting company
556.80
556.80
Commissions
1,520.63
$1,520.62
Salary, Burton Supply Co.
$2,565.00
2,565.00
Totals
$2,463.78
$3,984.41
$2,565.00
$4,085.62
*113 The returns filed by petitioners for 1944 reported the following incomes.. Jack
Salary, Brill Realty Corp.
$3,080.00
Partnership income - B & B Painting
Co.
1,371.92
Commissions
726.58
Total
$5,178.50
Morris
Salaries: War Engr. Dept. at Large
$1,467.33
Rokab Realty Corp.
200.00
Burton Supply Co.
1,330.00
$2,997.33
Commissions
1,642.22
Total
$4,639.55
Petitioner Jack Brill completed two years of high school education and prior to 1943 he had been a house painter. Petitioner Morris Brill completed about a year of high school. He was 39 at the time of the hearing. During 1943 and 1944 the petitioners operated their steel wool business from the back of their father's hardware store and from another store nearby. They did not form a partnership nor did they have any formal agreement as to the division of profits and losses, but they shared profits on an approximately equal basis. They used a rented truck once or twice a week to pick up the steel wool purchased from Hi-Glo Products Co. The steel wool purchased by petitioners came in cartons each of which contained 25 packages. Each of these packages, sometimes called "sleeves", *114 in turn contained either approximately a pound of steel wool in bulk or in 16 pads of steel wool, suitable for household cleaning chores. There were 25 sleeves containing 400 pads to a carton of steel wool pads. Whenever petitioners received cartons of pads, they would open the sleeves and repack the cartons so that they had 100 or 200 pads to a carton. They would resell the bulk steel wool without repacking it. The repackaging of the pads was done at the request of Morris Leinwand to whom the steel wool was resold in order to facilitate retail sales to housewives. Petitioners tried to make pads from the bulk steel wool but found it too difficult a task without machinery. They charged 50 cents a pound for the steel wool sold in bulk and $3.75 per hundred for the pads. Petitioners stopped selling steel wool about June 1944. The scarcity had abated by that time and the War Production Board had commenced an investigation to ascertain if the petitioners were selling steel wool for home use or for industrial use. Petitioners knew that priorities were required to buy steel wool for industrial use, and that its sale for home use was prohibited. Petitioners never obtained priorities for *115 either their purchases or their sales. Leinwand had told the petitioners that the steel wool he bought from them was being resold for home use. Petitioners told the WPB investigators that they had sold their steel wool to a person named Joseph Weber whose address they did not know and that they had received commissions of five cents a pound for selling the steel wool. Subsequently, on June 5, 1944, Morris sent the following letter to the New York Regional Office of the War Production Board: "As per your request, we are herewith enclosing the following statement pertaining to the previous conversation we had with you at your office in reference to the steel wool we sold for the Hi-Glo Products Co. "We have known Mr. Thorne and Mr. Cohen for the past five years in connection with their business of tile and waxes. I am the manager of a hardware store. "Last March of 1943, Mr. Thorne called on me to sell me steel wool. At the time, I purchased for the store a few cases. "The following October he approached me again and told me he had or could buy a quantity of steel wool. "I told him that I would not be interested in buying any because I still had some in stock. "He then *116 asked me if I knew of anyone that might be interested in buying some. "I didn't at the time, but I made an arrangement with him where he would pay me a commission for all steel wool he would sell through me. "My brother and I called on a number of people in the hardware business trying to sell them steel wool, but they thought the price was high. One day a man by the name of Joseph Weber called me and said he understood I had some steel wool for sale. I told him I didn't have it, but that I could arrange to get it for him. "I made an appointment with him to meet at the Hi-Glo Products Co. "We met there on October 13, 1944, and he picked up the same day 1450 lbs. steel wool. "At the same time he told us that he would be interested in purchasing some more. "Mr. Thorne told us then that more was coming in the following day. "Mr. Weber came back and picked up that merchandise. This was the usual routine whenever Mr. Weber came to pick up merchandise. "If we were there whenever he picked up merchandise, he would pay us and we would give the money less our commission to Mr. Thorne. "If we weren't there, he would pay Mr. Thorne and when we would come there Mr. Thorne would *117 give us our commission. "We sold 108,201 lbs. of steel wool for the Hi-Glo Products from October 13, 1943, to April 3, 1944." Petitioners did not keep inventory records or books of account on their steel wool business. They did not known how much inventory they had at a given date. They sold all they could get as quickly as they could. The petitioners' original income tax returns for 1943 did not reflect any income from steel wool transactions in that year. The statements in the amended returns for that year and the returns for 1944 concerning "commissions" were false and were made for the purpose of being consistent with the statements made by petitioners to the War Production Board. Petitioners in fact received no "commissions" but derived income by reason of selling the steel wool for more than they paid for it. The Commissioner in deficiency notices dated March 9, 1954, determined that the petitioners had fraudulently omitted the following amounts from their income tax returns for 1943 and 1944 with intent to evade tax: Jack Brill
1943
1944
Income from commissions
$ 1,520.63
Income from the sale of
steel wool
27,579.70
$16,719.19
Morris Brill
Income from commissions
1,520.62
Income from sale of steel
wool
27,579.70
16,719.19
*118 Petitioners pleaded the statute of limitations with respect to 1943 only. In his answers to the petitioners filed herein, the Commissioner alleged that each of the petitioners had received the sum of $27,579.70 in 1943, and the sum of $16,719.19 in 1944, as his distributive share of the net income from the sale of steel wool during those years, and that each had fraudulently omitted such amounts from his income tax with intent to evade tax. The Commissioner further alleged that the respective shares were computed as follows: 1943
Sales to Morris Leinwand: 7711 1/2 cases steel wool
(200 pads to case) at
$7.50
$57,836.25
17,944 lbs. steel wool in
bulk at.50
8,972.00
553 cases steel wool (25
lbs. to case at $12.50)
6,912.50
$ 73,720.75
Sales to Joseph Weber: 93,246 lbs. steel wool in bulk at.50
46,623.00
Total receipts
$120,343.75
Less cost of goods sold
65,184.35
Additional income
$ 55,159.40
Petitioner's share
$ 27,570.70
1944
Sales to Morris Leinwand: 6003 1/2 cases steel wool (200 pads to
case) at $7.50
$ 45,026.25
Sales to Joseph Weber: 14,955 lbs. steel wool in bulk at.50
7,477.50
Total receipts
$ 52,503.75
Less cost of goods sold
19,065.37
Additional income
$ 33,438.38
Petitioner's share
$ 16,719.19
*119 Each of the petitioners filed a reply in which he specifically denied receiving the sums of $27,579.70 and $16,719.19 set forth above, and further denied the making of sales to one Joseph Weber in the amounts of 93,246 pounds and 14,955 pounds in 1943 and 1944, respectively. Neither reply contained an express admission or denial with respect to the sales alleged to have been made to Morris Leinwand in 1943 and 1944. The unreported sales to Leinwand aggregated 128,162.75 pounds and 75,043.75 pounds of steel wool in 1943 and 1944, respectively. In addition the petitioners sold 11,195.5 pounds of steel wool during those years to other persons at 50 cents a pound through their father's store or on a door-to-door basis, and received additional receipts of $5,597.75 therefrom. Each of the petitioners filed a false and fraudulent return in 1943 with intent to evade tax, and part of the deficiencies of each petitioner for 1943 and 1944 is due to fraud with intent to evade tax. The stipulation of facts is incorporated herein by this reference. Opinion KERN, Judge: Some of the issues herein have been disposed of by the stipulation of facts and by concessions by the petitioners on *120 brief. The petitioners now admit that they made unreported sales of steel wool to Morris Leinwand in the amounts of $73,720.75 and $45,026.25 during 1943 and 1944, respectively. They also concede that they fraudulently omitted the income from these sales from their 1944 income tax returns. The only issues left for decision are whether the petitioners (a) received income in 1943 from commissions on the sale of steel wool, (b) failed to report additional income from the sale of steel wool on their own account to Joseph Weber or others, and (c) filed false and fraudulent income tax returns for 1943 with intent to evade tax. Commissions - 1943 This issue presents the question of whether petitioners lied in their representations to the War Production Board and in their amended returns for 1943, or lied in their testimony before this Court. This is a close question but, on the whole record, we are inclined to the view that they did not receive any "commissions" in 1943. Additional Steel Wool Sales - 1943 and 1944 Although the respondent's determination that the petitioners each derived additional income from the sale of steel wool in the amounts of $27,579.70 and $16,719.19 *121 in 1943 and 1944, respectively, is presumptively correct, we believe that the evidence in the record before us overcomes that presumption and establishes that the determination is, in part, erroneous even though the record is far from satisfactory and the testimony of some of the witnesses is confusing and contradictory. The parties have stipulated the dollar amount of the sales to Leinwand in 1943 and 1944, and have also stipulated the quantity of steel wool sold, partly in the number of cases or cartons and partly in the number of pounds. The parties have not, however, stipulated the quantity in such manner as to permit the computation of the total weight sold to Leinwand so that this amount could be compared with the quantity in pounds stipulated to have been purchased by petitioners in 1943 and 1944 from Hi-Glo Products Co. This would have permitted a computation of the amount of steel wool available for sale to others. Isidore Thorne, a partner in Hi-Glo Products Co., testified that his firm sold steel wool to the petitioners in cartons that were marked as containing 25 one-pound sleeves or 5 or 6 five-pound reels of steel wool, and that such sales were in bulk form and never *122 in pads. However, he admitted on cross examination that he had only occasionally opened and examined a carton delivered to the petitioners, and based his knowledge of the quantity and type of steel wool sold upon the markings placed on the cartons by the factory. Leinwand testified that he purchased the steel wool in pad form and that he received two types of cartons, one containing 100 pads and the other 200 pads. He also testified that he did not purchase steel wool in bulk, but the parties have stipulated that he did and have further stipulated the quantity and the amount. According to the stipulation of facts, Leinwand in 1943 purchased from the petitioners 7,711 1/2 cases of steel wool (200 pads to a case) at $7.50 each, and in 1944 purchased 6,0003 1/2 cases (200 pads to a case) at the same price in addition to a specified number of pounds of steel wool in bulk form. Respondent has attempted to supply the gap in the stipulation of facts and to prove the weight of the cartons containing the pads by means of a bill of lading prepared by Leinwand or his employee, and showing that a shipment of 50 cartons of scouring pads on October 13, 1943, weighed 300 pounds and that the customer *123 to whom they were shipped was billed on October 16, 1943, for 50 cases at $11 a case. However, we can not say that each of the cases of pads stipulated to have been sold to Leinwand, therefor, weighed six pounds since there is no evidence as to whether the 50 cases so shipped contained 100 pads or 200 pads, the price of $11 a case being in excess of both of the cost prices charged by the petitioners, namely, $3.75 for 100 pads and $7.50 for 200 pads. Although the issue is not free from doubt, it appears that a 400-pad carton such as that purchased by petitioners weighed 25 pounds and that the 200-pad cartons stipulated to have been sold to Leinwand each weighed approximately 12 1/2 pounds. On this basis, and using the stipulated weights of the steel wool sold in bulk, we have computed the weight of the steel wool sold by the petitioners to Leinwand to be as follows: 1943
Pounds
7.711 1/2 cases (200 pads to a case)
96,393.75
Bulk steel wool
17.944
553 cases (25 pounds to a case)
13,825
Total
128,162.75
1944
6,003 1/2 cases (200 pads to a case)
75,043.75
Total pounds of steel wool sold to
Leinwand 1943-1944
203.206.5
It has been stipulated that the *124 petitioners purchased 214,402 pounds of steel wool from Hi-Glo Products Co. during 1943 and 1944. Thus, the maximum amount of steel wool available to the petitioners for sale to persons other than Leinwand was 11,195.5 pounds. We have found as a fact that the petitioners sold such steel wool at 50 cents a pound to customers through their father's store or on a door-to-door basis at 50 cents a pound and realized additional unreported sales income in 1943 and 1944 of $5,597.75. This additional income may be allocated by the parties as between the two years under a Rule 50 computation on the basis of the same percentage of gross profit derived in each year on sales to Leinwand and such amounts equally divided between the petitioners. Except to the extent set forth above, we are, therefore, unable to sustain the respondent's determination of additional income from sales to Joseph Weber or others in 1943 and 1944. Fraud - 1943 In 1943 both of the petitioners were in their late twenties and had completed one and two years of high school education, respectively. They reported gross incomes on their original returns as follows: Jack
$2,463.78
Morris
2,565.00
It *125 has been stipulated that in 1943 they purchased steel wool for $65,184.35 cash and sold steel wool for $73,720.75 cash. The only excuse offered for their failure to report the income from these transactions was their ignorance of whether they had made a profit since they claimed that they had a supply of steel wool on hand at the end of the year and did not believe that they had at that time recovered their cash investment. However, even if the full cost of their 1943 purchases ($65,184.35) is allocated to the steel wool admittedly sold for cash in that year ($73,720.75) and the claimed inventory at the end of the year completely ignored, the petitioners realized a gross profit of over $8,000 or better than $4,000 each in 1943. This profit alone, without giving any effect to the omitted income from sales to other persons, is nearly twice the income reported for 1943 by each petitioner. Even if they failed to keep adequate records, the petitioners could not have failed to notice the increase in their cash resources and assets as compared with their other income, and it would be unreasonable to infer that the income from the sale of steel wool was not reported through some mere oversight. *126 The black market activity in which the petitioners were admittedly engaged in violation of the regulations of the War Production Board, the false statements knowingly and willfully made orally and in writing to the investigators for the Board and on their amended income tax returns for 1943, the concerted efforts by petitioners to conceal their transactions from official inspection, and our observation of the petitioners on the witness stand, cause us to reject their testimony as to the reason for their omission of the additional income as not worthy of belief. The petitioners were of sufficient intelligence and education to be aware of the consequences of their actions. They have conceded that the omissions in 1944, the year afterwards (approximately $13,000 each on sales to Leinwand alone against reported incomes of $5,200 and $4,600, respectively,) were fraudulent and we view their activities in both years as part of one pattern. The omissions in both years were so large in relation to the income reported and the excuse so lame as to compel us to conclude that the evidence of fraud is clear and convincing and we so hold. ; ; *127 ; . Petitioners requested on brief that we allow certain trucking expenses as business deductions against the income from the steel wool sales, but such items are not in issue before us under the pleadings. Decisions will be entered under Rule 50. Footnotes
*. As shown by the retained duplicate invoices of the Hi-Glo Products Co.↩